NOTICE

Decision filed 07/09/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250282

NO. 5-25-0282

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | Nos. 22-CF-273 & |
| | ) | 24-CF-203 |
| | ) | |
| RICKY A. COOPER, | ) | Honorable |
| | ) | Michelle M. Schafer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court, with opinion.
Justices Vaughan and Sholar concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Ricky A. Cooper, pleaded guilty to one count of aggravated driving with a revoked license and one count of possession of a stolen vehicle. Defendant was sentenced to an aggregate of 20 years in the Department of Corrections with a mandatory supervised release period of 18 months. On appeal, defendant asserts that the United States Supreme Court case *Erlinger v. United States*, 602 U.S. 821 (2024), makes facially unconstitutional sections 6-303 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/6-303 (West 2022)) and 5-5-3.2 of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-3.2 (West 2022)), under which defendant was sentenced to two consecutive extended-term sentences. Defendant also asserts that the circuit court abused its discretion in sentencing him, where the circuit court considered a probable cause

1

affidavit, imposed a discretionary consecutive term, did not admonish the defendant such a term was possible, and did not properly weigh aggravating and mitigating evidence. Last, defendant asserts that his plea counsel or postplea counsel provided him ineffective assistance, where he asserts both should have challenged the use of the probable cause affidavit during sentencing and both should have challenged the constitutionality of the aforementioned statutes in light of the *Erlinger* decision. We find neither statute is facially unconstitutional in light of *Erlinger*, the circuit court did not abuse its discretion in sentencing defendant, and neither counsel were ineffective where a challenge in light of *Erlinger* was not warranted and the circuit court properly considered the evidence before it in sentencing. As such, we affirm.

¶ 2                                  I. BACKGROUND

¶ 3     On May 25, 2022, defendant was charged by information with one count of aggravated driving while his license was revoked, in that he drove a vehicle in Williamson County, "at a time when the defendant's driving privileges were revoked for driving under the influence," and that it was his "third violation" under section 6-303 of the Vehicle Code (case No. 22-CF-273). On February 29, 2024, defendant was charged by information with three counts: one of child abduction, another of obstructing justice, and the last with endangering the life or health of a child. The informations alleged that defendant, without the permission of the custodial parent, fled with his three-year-old son from police on an all-terrain recreational vehicle in a high-speed chase through roadways, fields, and ditches; disobeyed traffic control devices and eluded apprehension; and then concealed said vehicle (case No. 24-CF-203).

¶ 4     On March 1, 2024, defendant requested that he be placed on home confinement with electronic monitoring at his parents' home. The same day, defendant's request was granted in a GPS electronic monitoring order.

2

¶ 5    On March 18, 2024, the circuit court indicated in a hearing that it "received from the Defendant a written Plea of Guilty and Waiver of Trial as to Count I, Driving While License Revoked, Aggravated Driving with Licensed Revoked in 22-CF-273. And the court has a Written Waiver of Preliminary Hearing and a Plea of Guilty and Waiver of Trial as to Count IV, Possession of a Stolen Vehicle in 24-CF-203." Defendant confirmed that he read, understood, and signed the aforementioned documents. Defendant confirmed that he understood what rights he was giving up as a result of waiving his preliminary hearing. Defendant also denied being promised anything, coerced, or threatened into waiving his right to a preliminary hearing and denied being under the influence of any drug, alcohol, or substance that would alter his understanding.

¶ 6    Defendant pleaded guilty to counts I and IV the same day. Defendant was informed that, by so pleading, "the State will no longer have the burden to prove you guilty beyond a reasonable doubt." Defendant was informed of the applicable sentencing ranges for the crimes he pleaded guilty to and that, if he was determined to be extended term eligible, count I could be "up to six years" and count IV could be "up to 14 years." Defendant confirmed that he "realize[d] that this is an open plea of guilty" and answered "Yes, ma'am" to whether he understood he could be sentenced "to any of those possible penalties without regard to any agreement."

¶ 7    The circuit court was then provided the factual basis for each count. Relevant to count I, the State provided that it would have called Deputy Brayden Bisaillon of the Williamson County Sheriff's Office. Deputy Bisaillon would testify that on May 25, 2022, he observed defendant operating a motorcycle and that he was aware that defendant's driving privileges were revoked. Deputy Bisaillon would testify that he stopped defendant and placed him under arrest. The State also provided that it would introduce "the Illinois Secretary of State abstract showing that he was, in fact, revoked for DUI and that it was his third violation."

3

¶ 8    Relevant to count IV, the State provided that it would have called Brad Thornton, Logan Troxel, and Ryan Snider of the Williamson County Sheriff's Office. Deputy Thornton would testify that on February 28, 2024, he observed defendant operating a four-wheeler on a public roadway and that he was aware defendant's driving privileges were revoked. Deputy Thornton would testify that he attempted to stop defendant, but defendant evaded him. They would testify that defendant was later taken into custody and a search was conducted. Deputy Thornton would testify that defendant informed him where they could find the four-wheeler, and Deputy Snider discovered the four-wheeler where defendant said they could find it. The State provided that it would also present testimony from the owner of the four-wheeler that defendant "did not have permission to be in possession of it."

¶ 9    Defendant's plea counsel acknowledged both factual bases as being "the State's evidence," and the circuit court accepted defendant's guilty plea on both counts. The circuit court stated that the pleas were "knowingly, voluntarily, and intelligently made consisting with the factual basis proffered by the State, [and] acknowledged to be the State's evidence by the defense."

¶ 10    The circuit court stated, "I understand that there is some type of a negotiated sentence. I don't know what that is. Will that remain in effect until [April 1, 2024]?" Defendant's plea counsel stated that it would remain in effect until the aforementioned date and asked to make a record of the negotiated sentence so defendant "is very clear" that it was what the State planned to present to the circuit court. The State provided that "the negotiation at this point is he would be sentenced to four years in the Department of Corrections on 22-CF-273 with credit for any time served. He would be sentenced to four years consecutive to that in 24-CF-203 with credit for any time served." The State went on to provide that the other three counts would be dismissed as part of the negotiated plea. The State then provided, "[Defendant, however,] will remain on electronic home

monitoring during this period. If he violates that, if he gets into any new criminal trouble, all negotiations are off the table, and we will proceed to a sentencing hearing." Defendant indicated that he understood the terms of the negotiated sentence.

¶ 11    Three days later, on March 21, 2024, a petition for the revocation of defendant's presentencing release was filed, stating that defendant violated his home confinement. A hearing on the petition to revoke was held on March 25, 2024, wherein the circuit court took judicial notice of the violation report and an officer testified that he made sure the monitor was operating properly before it was placed on defendant and after it was taken off. The violation report showed that defendant exited the inclusion zone for his electronic monitor three times on March 19, 2024, with each exit being 50 to 55 minutes in length before he returned to the zone. The circuit court sanctioned defendant as a result of these violations, imposing upon him "that he will spend the time in jail from the time that he got picked up on the 20th through today."

¶ 12    On April 1, 2024, another petition for revocation of presentencing release was filed. This time the petition alleged that defendant violated home confinement just four days after the hearing on the last petition to revoke, on March 29, 2024. The petition alleged that defendant committed the offense of escape, in violation of section 31-6(a) of the Criminal Code of 2012 (720 ILCS 5/31-6(a) (West 2024)). On April 2, 2024, an entry was made, indicating that on April 1, 2024, defendant was placed into custody for a new violation of his pretrial release and that it was alleged that defendant cut off his electronic monitor after his release on March 25, 2024.

¶ 13    On June 27, 2024, defendant's sentencing hearing was held. Both defendant's presentence investigation report and his driving abstract were admitted, to be considered during sentencing. During the hearing, defendant stated that he took "complete responsibility for the reasons [he was] in the courtroom today." He stated that he "acknowledge[d]" the facts that brought him to be in

5

the circuit court and "apologize[d]" to everyone affected by his actions. He claimed to no longer be the man that engaged in the lawless conduct just three months earlier and asked to be put in a two-year recovery program.

¶ 14    In the sentencing hearing, the State asserted that the only factor in mitigation was that defendant's conduct neither caused nor threatened serious physical harm, nor did he contemplate that his conduct would do so, and that factor was only present for the charge of aggravated driving with a revoked license. The State asserted that defendant's conduct threatened serious harm for the possession of a stolen vehicle charge, where defendant fled from police on a four-wheeler with his three-year-old son in his lap and with his son not wearing a helmet. The State highlighted defendant's "abundant" history of prior delinquency, citing (1) a 2002 mob action conviction, (2) a 2003 DUI conviction, (3) a 2004 theft and assault conviction, (4) a 2005 possession of a controlled substance conviction, (5) another DUI conviction, this time in 2005, (6) two separate driving on a suspended license convictions, also in 2005, (7) a theft conviction in 2006, and (8) a second degree murder conviction in 2008, to which he was sentenced to 20 years. The State asserted that a sentence was necessary to deter others. The State also asserted that aggravation factor "12 applies for 24-CF-203," because he "was convicted while on pretrial release in 22-CF-273, for which he was convicted." The State provided further, "he's eligible for extended term because this all occurred within ten years of his Class 1, excluding prison time." The State requested that defendant be sentenced to 6 years for the charge of aggravated driving with a revoked license and a consecutive term of 14 years for the charge of possession of a stolen vehicle, for an aggregate of 20 years.

¶ 15    Outside of the statutory factor in mitigation that the State already presented for the aggravated driving with a revoked license charge, plea counsel presented a number of nonstatutory

factors defendant felt warranted residential treatment rather than a prison sentence. Plea counsel highlighted that defendant was an alcoholic and drug addict. Plea counsel also highlighted that defendant had behavioral problems in school growing up. Plea counsel also asserted, as defendant stated himself, that he does better "in a controlled environment." Plea counsel also mentioned that defendant had a lot of familial support, was at a point in his life where he wanted to "turn this around," and has reasons to change now. Plea counsel noted that when defendant entered his guilty pleas "it was contemplated that [defendant], if there were no difficulties *** before his sentencing hearing, it would be a [*sic*] four years on each case consecutive."

¶ 16 The circuit court, in imposing its sentence, expressed that defendant was given "the opportunity to get treatment. He went there and he left." The circuit court stated that it considered the presentence investigation report and accepted it as part of the record during sentencing. The circuit court stated it considered all the factors in aggravation and mitigation, even the nonstatutory factors. The circuit court expressed that plea counsel's recollection was accurate, "that they told the Court on the record we have an agreement, he's going to serve four years on each case consecutive." The circuit court followed the State's sentence recommendation and sentenced defendant to an aggregate 20-year sentence.

¶ 17 On July 8, 2024, defendant filed a motion to withdraw his guilty plea, stating that he was under the influence of drugs at the time of the plea and that the plea was resultingly not knowing or voluntary. Defendant also filed a motion to reconsider his sentence, asserting that (1) section 5-8-4(d) of the Code of Corrections does not mandate consecutive sentencing, (2) that his crimes were not violent nor was violence or harm contemplated, (3) that his addiction played a role in his prior criminal history, and (4) that he had two dependent children aged two and three years old.

¶ 18    On October 17, 2024, a hearing was held on the motions to withdraw and reconsider. During the hearing, plea counsel made an oral motion to withdraw as defendant's counsel, stating that defendant indicated he may want to raise additional issues that may concern ineffective assistance of counsel. The circuit court asked defendant about his plea counsel's assertions in seeking to withdraw. Defendant asked how he could "effectively talk to an attorney" while "being in the Department of Corrections" and stated that he felt that he needed to be "right here in the county jail" for his case. Defendant stated that his conversation with the circuit court at this hearing was "the first clear conversation [he] had through this whole process." Defendant then stated he thought they "should just start this whole thing over." The circuit court set the hearing on the motions to withdraw the guilty plea and reconsider sentence for another day, pending the appointment of new counsel for defendant. The same day, the circuit court appointed new counsel for defendant.

¶ 19    On February 27, 2025, postplea counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). The certificate stated that he consulted with defendant to ascertain defendant's contentions of error, examined the circuit court file and report of proceedings of the plea of guilty and sentencing, and made any amendments necessary to the motions for adequate presentation of any defects of the proceedings. The same day, a hearing was held on the motions to reconsider sentence and to withdraw the guilty plea. After consideration, the circuit court denied both of defendant's motions, stating that there was no evidence defendant was under the influence of any type of substance or illicit drug and it adequately considered all factors in aggravation and mitigation.

¶ 20    On April 9, 2025, a late notice of appeal was filed. On April 29, 2025, defendant's motion for leave to file a late notice of appeal was granted. On December 11, 2025, the Illinois Supreme

8

Court directed us to allow defendant leave to amend his notice of appeal to include No. 22-CF-273, as it already included No. 24-CF-203. The amended notice of appeal was filed December 15, 2025.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, defendant asserts that his sentence should be vacated and this case remanded in light of *Erlinger*, where he claims his plea and postplea counsel's failures to challenge the sentencing statutes for being facially unconstitutional resulted in plain error and ineffective assistance of counsel. Defendant also asserts that the circuit court abused its discretion in sentencing defendant, arguing that the circuit court improperly considered the probable cause affidavit, improperly imposed a discretionary consecutive term that he claims he was unaware could be imposed, and improperly balanced the factors in aggravation and mitigation. Finally, defendant asserts plea and postplea counsel provided ineffective assistance, where plea counsel did not object to the probable cause affidavit being considered, nor did postplea counsel amend the motions to include the alleged error.

¶ 23    The State responds that defendant failed to show that the sentencing statutes were facially unconstitutional. The State asserts that neither counsel was ineffective because no error occurred that would require either counsel to challenge the sentence. The State contends that the circuit court did not abuse its discretion in sentencing defendant, where it properly considered the probable cause affidavit defendant did not object to, properly imposed consecutive sentences, and properly balanced the evidence in aggravation and mitigation. Last, the State argues that neither counsel was ineffective for failing to challenge the use of the probable cause affidavit during sentencing, because a lack of an objection effectively amounted to a stipulation and therefore the

9

error was invited and any amendment to the motions complaining of such would be meritless. The State asks that we affirm defendant's convictions and sentences.

¶ 24　In his reply, defendant relies on much of the same arguments he relied upon in his opening brief. He clarifies that his constitutional challenges are facial challenges. Defendant states that *People v. Holman*, 2025 IL App (2d) 240513, which the State relied on in its brief, was incorrectly decided. Defendant distinguishes *People v. Coopwood*, 2025 IL App (3d) 240579-U. Defendant distinguishes *People v. Redding*, 2022 IL App (4th) 210727-U, and states that counsel could still be found ineffective under the facts of the case. Defendant again asks us to vacate and remand his sentence. For the foregoing reasons, we affirm defendant's consecutive sentences.

¶ 25　　　　　　　　　　　　A. *Apprendi*, *Erlinger*, and *Holman*

¶ 26　Given the parties' discussion of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Erlinger*, 602 U.S. 821, and *Holman*, 2025 IL App (2d) 240513, we find it necessary to discuss each case here.

¶ 27　　　　　　　　　　　　　　　1. *Apprendi*

¶ 28　In *Apprendi*, a New Jersey statute classified the possession of a firearm for an unlawful purpose as a "second-degree" offense, which carried with it a 5- to 10-year sentence. (Internal quotation marks omitted.) *Apprendi*, 530 U.S. at 468. A separate statute, which was described as a " 'hate crime' law," provided for an extended-term sentence if a trial judge found, by a preponderance of the evidence, that the crime was committed for the purpose of intimidating an individual or a group because of their race, color, gender, handicap, religion, sexual orientation, or ethnicity. *Id.* at 468-69. The extended term authorized by the hate crime law for a second-degree offense was between 10 and 20 years. *Id.* at 469.

¶ 29    On the night of the crime the defendant fired several .22-caliber bullets into the home of an African American family that had recently moved into a previously all-White neighborhood. *Id.* The defendant was quickly arrested and admitted that he was the shooter, and a New Jersey grand jury later returned a 23-count indictment, charging the defendant with, *inter alia*, unlawful possession of various weapons; none of the counts referred to the hate crime statute, and none alleged that the defendant acted with a racially biased purpose. *Id.*

¶ 30    The defendant entered into a plea agreement wherein he pleaded guilty to two counts of second-degree possession of a firearm for an unlawful purpose and one count of unlawful possession of an antipersonnel bomb. *Id.* at 469-70. As part of the plea agreement, the State reserved the right to pursue a higher enhanced sentence on one of the second-degree possession counts. *Id.* at 470. Likewise, the defendant reserved the right to challenge the hate crime sentence enhancement on the ground that it violates the United States Constitution. If the court enhanced one of the second-degree offenses based on the hate crime law, the aggregate sentence the defendant could receive would increase from a maximum of 20 years to a maximum of 30 years, with a 15-year period of parole ineligibility. *Id.*

¶ 31    After the circuit court accepted the defendant's three guilty pleas, the prosecutor filed a formal motion for an extended term. *Id.* The circuit court held an evidentiary hearing on the issues of the defendant's purpose for shooting into the home. *Id.* The defendant provided a psychologist and seven character witnesses who testified he did not have a reputation for racial bias. *Id.* at 470-71. The defendant also took the stand, asserting that he was intoxicated, denying any bias toward African Americans, and denying that his statement to police had been accurately described. *Id.* at 471. The circuit court found the police officer's testimony credible and concluded that the evidence supported a finding that the crime was racially motivated. *Id.* The circuit court found the hate crime

11

enhancement applied, rejected the defendant's constitutional challenge to the statute, and sentenced him to 12 years on the enhanced count and lesser concurrent sentences on the other two counts. *Id.* The defendant appealed, arguing, *inter alia*, that the finding of bias upon which his hate crime sentence was based must be proved to a jury beyond a reasonable doubt and that his due process rights were violated. *Id.* The issue ultimately came before the United States Supreme Court. *Id.* at 474.

¶ 32    The Court stated in its decision, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Court stated that the hate crime enhancement mandated an examination of the defendant's *mens rea*, which "is perhaps as close as one might hope to come to a core criminal offense 'element.' " *Id.* at 492-93. The Court stated, however, that it did not matter whether the finding was characterized as intent or motive, because "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 494. The Court found that the effect of New Jersey's sentencing enhancement was to turn a second-degree offense into a first-degree offense. *Id.* The sentencing enhancement was ultimately found unconstitutional. *Id.* at 497.

¶ 33                                    2. *Erlinger*

¶ 34    In *Erlinger*, a federal statute, the Armed Career Criminal Act of 1984 (Armed Career Criminal Act) (18 U.S.C. § 924(e)(1) (2012)), imposed a lengthy sentence on defendants who had "previously committed three violent felonies or serious drug offenses on separate occasions." *Erlinger*, 602 U.S. at 825. At issue was the district court's determination of what constituted a

"separate occasion[ ]" and if such a determination could be decided under a preponderance of the evidence standard of proof. *Id.*

¶ 35    The defendant was charged with being a felon unlawfully in possession of a firearm, which carried a sentence up to 10 years. *Id.* The defendant was also, however, charged under the Armed Career Criminal Act, and under that act, if a defendant was found guilty of being a felon in unlawful possession of a firearm and had three prior convictions for violent felonies or serious drug offenses that were committed on separate occasions from one another, the potential prison sentence increased to 15 years to life. *Id.*

¶ 36    The defendant pleaded guilty to being a felon in unlawful possession of a firearm but, in doing so, stressed that his previous convictions were over a decade old and he had since turned his life around, secured a steady job, built a family, and remained drug-free. *Id.* at 826. The district court stated that a 5-year prison sentence would be a fair sentence but also found by a preponderance of the evidence that the defendant had three qualifying past offenses and, based on that finding, stated that it was required to sentence him to the mandatory minimum 15-year sentence. *Id.*

¶ 37    Shortly after the district court imposed the 15-year sentence on the defendant, the Seventh Circuit issued decisions indicating that two of the three offenses the district court relied on did not qualify as violent felonies or serious drug offenses. *Id.* Recognizing that the defendant no longer had the requisite number of qualifying crimes for the Armed Career Criminal Act, the district court vacated its sentence and set the case for a new sentencing hearing. *Id.*

¶ 38    At the new sentencing hearing, prosecutors again pursued the 15-year sentence under the Armed Career Criminal Act. *Id.* At the new hearing, however, the government pointed to a string of burglaries the defendant committed 26 years prior. *Id.* The government asserted that, within the

span of days, the defendant burglarized a pizza shop, a sporting goods store, and two restaurants. *Id.* The government asserted that, because these burglaries occurred on different occasions, each was a qualifying crime under the Armed Career Criminal Act. *Id.* at 826-27.

¶ 39    The defendant protested, maintaining that the string of burglaries had not occurred on four separate occasions but during a single criminal episode, thereby only amounting to one collective crime under the Armed Career Criminal Act. *Id.* at 827. The defendant argued further that the question of whether he committed his prior burglaries during a single episode or on distinct occasions required an assessment of the facts surrounding those offenses and contended that the fifth and sixth amendments (U.S. Const., amends. V, VI) entitled him to have a jury make that assessment. *Erlinger*, 602 U.S. at 827. The district court rejected the defendant's request for a jury and found that the string of four burglaries occurred on distinct occasions. *Id.* As a result, the district court resentenced the defendant to 15 years, having found that defendant had three qualifying crimes under the Armed Career Criminal Act. *Id.*

¶ 40    The defendant appealed on the very same constitutional issue. *Id.* On appeal, the government confessed error, stating that the constitution required a jury to decide unanimously, beyond a reasonable doubt, whether the defendant had committed the qualifying crimes on separate occasions. *Id.* In its confession of error, the government noted that *Wooden v. United States*, 595 U.S. 360 (2022), reviewed the Armed Career Criminal Act. *Erlinger*, 602 U.S. at 827-28. The government determined that the Armed Career Criminal Act required an intensely fact-based inquiry that impacts a defendant's sentence and therefore a jury must resolve it. *Id.* at 828. Despite the government's concession, the Seventh Circuit did not disturb the district court's sentence. *Id.* Resultingly, the issue went before the United States Supreme Court. *Id.*

14

¶ 41 The government once more conceded the issue on appeal. *Id.* at 834. The Court stated that deciding whether past offenses occurred on three or more separate occasions was a fact-laden task that involved three questions: (1) were the crimes committed close in time, (2) what was the proximity of the crimes' locations, and (3) were the crimes similar or intertwined in purpose and character? *Id.*

¶ 42 The Court distinguished *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), stating that the Court permitted a judge to undertake the job of finding the fact of a prior conviction and that job alone. *Erlinger*, 602 U.S. at 837. The Court went on to provide, "To conduct the narrow inquiry *Almendarez-Torres* authorizes, a court may need to know the jurisdiction in which the defendant's crime occurred and its date in order to ascertain what legal elements the government had to prove to secure a conviction in that place at that time." *Id.* at 839. The Court continued, "And to answer those questions, a sentencing court may sometimes consult 'a restricted set of materials,' often called *Shepard* documents, that include judicial records, plea agreements, and colloquies between a judge and the defendant." *Id.* (quoting *Descamps v. United States*, 570 U.S. 254, 262 (2013)); see *Shepard v. United States*, 544 U.S. 13 (2005). The Court stated further, "a sentencing judge may use the information he gleans from *Shepard* documents for the 'limited function' of determining the fact of a prior conviction and the then-existing elements of that offense. [Citation.] '[N]o more' is allowed." *Erlinger*, 602 U.S. at 839. The Court stated that a judge may not use information in *Shepard* documents to decide what the defendant actually did, or the means or manner in which he committed the offense in order to increase the punishment he may see. *Id.* at 839-40.

¶ 43 The Court stated that the district court erred where it assumed the responsibility of deciding whether the defendant's "past offenses differed enough in time, location, character, and purpose

15

to have transpired on different occasions." *Id.* at 840. The Court ultimately found that the defendant's fifth and sixth amendment rights were violated when the district court rejected his request for a jury to make the occasion determination in the Armed Career Criminal Act beyond a reasonable doubt. *Id.* at 849.

¶ 44                                                     3. *Holman*

¶ 45       In *Holman*, the defendant was charged and tried on two counts of aggravated battery, one count of robbery, and one count of theft from a person. *Holman*, 2025 IL App (2d) 240513, ¶ 3. After a jury trial, the defendant was only found guilty on the charge of theft from a person. *Id.* ¶ 27.

¶ 46       During sentencing, the State presented, *inter alia*, a police synopsis from a case in which the defendant was convicted of armed violence and aggravated battery. *Id.* ¶ 30. The State argued that the defendant was extended-term eligible based on the aforementioned prior conviction, for which the defendant was released from Department of Corrections custody on July 21, 2017. *Id.* ¶ 31. Both the State and defense argued factors in aggravation and mitigation. *Id.* ¶¶ 31-32. The trial court found the defendant to be extended-term eligible and sentenced him to six years. *Id.* ¶ 33.

¶ 47       The defendant on appeal contended that under *Erlinger* the trial court's failure to submit the question of his extended-term eligibility to the jury violated his constitutional rights to due process and a jury trial. *Id.* ¶ 38. The court stated that the trial court found the defendant was extended-term eligible under section 5-5-3.2(b)(1) of the Code of Corrections (730 ILCS 5/5-5-3.2(b)(1) (West 2022)). *Holman*, 2025 IL App (2d) 240513, ¶ 42. The court analyzed *Erlinger* and followed that analysis, stating, "defendant here was found eligible for an extended-term sentence, based on a single felony conviction. The mere fact of this conviction does not need to be submitted

16

to a jury." *Id.* ¶¶ 44-45. The court went on, stating that it did not believe *Erlinger* imposed a requirement to submit defendant's prior convictions to a jury. *Id.* ¶ 46. The court stated further that section 5-5-3.2 presents a much simpler inquiry than that of the Armed Career Criminal Act and can be readily discerned by review of public records or the presentence investigation. *Id.* The court explained that *Erlinger* did not overturn or narrow the holdings in *Apprendi* and *Almendarez-Torres*. *Id.* "Further, Illinois courts have repeatedly held that section 5-5-3.2(b)(1) is constitutional under *Apprendi*." *Id.* (citing *People v. Johnson*, 372 Ill. App. 3d 772, 781 (2007); *People v. James*, 362 Ill. App. 3d 285, 293 (2005); *People v. Blanks*, 361 Ill. App. 3d 400, 414 (2005)). The court also noted that another appellate district court found similarly. *Id.* ¶ 47 (citing *Coopwood*, 2025 IL App (3d) 240579-U, ¶ 19).

¶ 48    The court held that

> "the date of defendant's release from custody is not a fact that must be submitted to a jury but is 'intrinsic to the conviction' and can be properly determined by the court. [Citation.] Further, we note that courts may take judicial notice of the public records of the Illinois Department of Corrections regarding the dates of a conviction and release from custody."
> *Id.* (citing *People v. Yancy*, 368 Ill. App. 3d 381, 393 (2005); *People v. Sanchez*, 404 Ill. App. 3d 15, 17 (2010)).

¶ 49                              4. Plain Error Review for Guilty Pleas

¶ 50    Having analyzed the primary cases at issue here, we next address plain error review for guilty pleas. While both parties on appeal addressed forfeiture of constitutional challenges on appeal, neither party addressed waiver, which precludes our review under a plain error analysis.

¶ 51    "By entering a plea agreement, a defendant forecloses any claim of error." (Internal quotation marks omitted.) *People v. Jones*, 2021 IL 126432, ¶ 20. "This court has long held that a

17

constitutional right, like any other right of an accused, may be waived, and a voluntary plea of guilty waives all errors or irregularities that are not jurisdictional." (Internal quotation marks omitted.) *People v. Ratliff*, 2024 IL 129356, ¶ 21. " '*Apprendi*-based sentencing [claims] cannot be heard on appeal from a guilty plea.' " *People v. Townsell*, 209 Ill. 2d 543, 546 (2004) (quoting *People v. Jackson*, 199 Ill. 2d 286, 296 (2002)). *Erlinger* is part of *Apprendi*'s progeny. See *Erlinger*, 602 U.S. at 835 (stating "this case is as nearly on all fours with *Apprendi* and *Alleyne* as any we might imagine"). An *Apprendi* claim that is waived pursuant to a guilty plea may not be considered on appeal under the plain error exception to the waiver rule. *Townsell*, 209 Ill. 2d at 544.

¶ 52 The case law is very clear. Given the fact that defendant pleaded guilty here, he has waived any appellate review under a plain error analysis.

¶ 53         5. The Facial Constitutionality of the Statutes; Ineffective Assistance

¶ 54 Though our review is precluded under a plain error analysis, it is not precluded under an ineffective assistance of counsel analysis. Under such an analysis, neither plea nor postplea counsel can be found ineffective where defendant's claim of error does not exist because the statutes are not facially unconstitutional.

¶ 55 A facial challenge to a statute is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Since *Erlinger* was decided, three separate districts of our appellate court either have outright rejected the notion that *Erlinger* imposes a requirement that a trial court must submit the date of a prior conviction to a jury or have reacknowledged that section 5-5-3.2 of the Code of Corrections is not facially unconstitutional.

18

See *Holman*, 2025 IL App (2d) 240513, ¶¶ 43-45; *Coopwood*, 2025 IL App (3d) 240579-U, ¶ 19; *People v. Watts*, 2024 IL App (1st) 231265-U, ¶ 49.

¶ 56    Defendant was convicted pursuant to section 6-303(d-2) of the Vehicle Code, which provides,

> "[a]ny person convicted of a third violation of this Section is guilty of a Class 4 felony *** if:
>
> > (1) the current violation occurred when the person's driver's license was *** revoked for a violation of Section *** 11-501 *** and
> >
> > (2) the prior convictions under this Section occurred while the person's driver's license was *** revoked for a violation of Section *** 11-501 of this Code." 625 ILCS 5/6-303(d-2) (West 2022).

Possession of a stolen vehicle is a Class 2 felony. *Id.* § 4-103(b). Section 5-5-3.2(b)(1) of the Code of Corrections provides, "When a defendant is convicted of any felony, after having been previously convicted in Illinois *** of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts," an extended-term sentence may be imposed. 730 ILCS 5/5-5-3.2(b)(1) (West 2022). Defendant was convicted of second degree murder, a Class 1 felony, on October 21, 2009, and sentenced to 20 years. 720 ILCS 5/9-2(d) (West 2008). Defendant's discharge date for his second degree murder conviction was February 28, 2020. A Class 4 felony's usual sentencing range is 1 to 3 years of imprisonment; the extended-term sentence is 3 to 6 years. 730 ILCS 5/5-4.5-45 (West 2022). A Class 2 felony's usual sentencing range is 3 to 7 years of imprisonment; the extended-term sentence is 7 to 14 years. *Id.* § 5-4.5-35.

¶ 57 On appeal, defendant argues that section 6-303(d-2) of the Vehicle Code does not require prior convictions to enhance driving on a revoked or suspended license to a Class 4 felony and, thus, does not comport with *Erlinger* or *Apprendi*. Defendant misreads the statute. The statute reads, in relevant part,

> "[a]ny person *convicted* of a third violation of this Section is guilty of a Class 4 felony *** if:
>
> (1) the current violation occurred when the person's driver's license was *** revoked for a violation of Section *** 11-501 *** and
>
> (2) the prior *convictions* under this Section occurred while the person's driver's license was *** revoked for a violation of Section *** 11-501 of this Code." (Emphases added.) 625 ILCS 5/6-303(d-2) (West 2022).

This Court can think of no other reasonable way to interpret this statute beyond two prior *convictions* increasing the classification of the crime to a Class 4 felony upon a third *conviction*.

¶ 58 Defendant's main argument on appeal is that section 5-5-3.2(b)(1) of the Code of Corrections is unconstitutional on its face, as it requires lower courts to make more of a determination than the fact of a prior conviction, and runs afoul of *Erlinger*. We disagree.

¶ 59 As discussed earlier, the Armed Career Criminal Act that *Erlinger* reviewed required a number of fact-intensive questions to be asked and answered for the occasions inquiry: (1) were the crimes committed close in time, (2) what was the proximity of the crimes' locations, and (3) were the crimes similar or intertwined in purpose and character? The *only* one of these questions that could be asked as it related to section 5-5-3.2(b)(1) of the Code of Corrections is closeness in time, and context is pivotal in that inquiry. In *Erlinger*, the question of the crimes' temporal proximity was not similar to the question here, as the Court in *Erlinger* was analyzing an

act that required three separate qualifying convictions in the past. At issue in *Erlinger* was whether a string of four robberies constituted four separate crimes or a single criminal episode. Also, in *Erlinger* the defendant contested that the four robberies happened on separate occasions. Here, defendant does not contend that his 2008 murder, which he completed the sentence for in 2020, was part of the same criminal episode as the charges he amassed in 2022 and 2024, nor can he.

¶ 60    A facial challenge is "the most difficult challenge to mount successfully." *Salerno*, 481 U.S. at 745. As Illinois courts have determined both before and after the *Erlinger* decision, section 5-5-3.2(b) is not facially unconstitutional. Further, as defendant clarifies in his reply brief, he does not assert an as-applied constitutional challenge, even though that too would have been unsuccessful in light of the facts of this case. We find, in line with the First, Second, and Third Districts, that *Erlinger* neither narrows nor overturns *Apprendi* and *Almendarez-Torres*. As such, section 5-5-3.2(b)(1) is still facially constitutional.

¶ 61    Moving to the allegations of ineffective assistance, the analysis for ineffective assistance of counsel is two-prong. First, "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "To prevail, the defendant must satisfy both prongs of the *Strickland* test. [Citation.] The failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *People v. Yankaway*, 2025 IL 130207, ¶ 62. Where a challenge by counsel of the complained upon conduct would have no merit in the lower court, defendant cannot establish counsel provided deficient performance. See *People v. Drain*, 2023 IL App (4th) 210355, ¶ 58.

¶ 62 Here, because *Erlinger* does not provide what defendant asserted it does, a challenge to the facial constitutionality of the sentencing statute was not warranted. Also, "[t]o establish deficient performance, a defendant must prove that counsel's performance, judged by an objective standard of competence under prevailing professional norms, was so deficient that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Webb*, 2023 IL 128957, ¶ 22. It cannot be said, where Illinois courts both before and after *Erlinger* have determined that section 5-5-3.2(b)(1) is facially constitutional, that plea counsel and postplea counsel were not operating under prevailing professional norms when not challenging the constitutionality of the statutes. Because we find defendant failed to establish deficient performance, we need not address prejudice.

¶ 63                                    B. Sentencing

¶ 64 On appeal defendant lists a number of reasons why he believes the circuit court abused its discretion when sentencing him. Defendant asserts that the circuit court (1) erroneously considered a probable cause affidavit that he also claims his plea and postplea counsel were ineffective for not challenging, (2) did not duly consider defendant's rehabilitative potential, (3) failed to adequately consider the effect an extended-term sentence would have on his children, and (4) failed to apprise defendant of the possibility of a consecutive sentence.

¶ 65 "It is well established that the ordinary rules of evidence are relaxed during sentencing hearings." *People v. Varghese*, 391 Ill. App. 3d 866, 873 (2009). "The source and type of admissible information is virtually without limits." *Id.* Even "criminal conduct not resulting in prosecution or conviction may be considered." *People v. Harris*, 375 Ill. App. 3d 398, 409 (2007). The mere fact that the evidence presented during a sentencing hearing "contains hearsay does not make it *per se* inadmissible," and a hearsay objection during sentencing "affects the weight rather

22

than the admissibility of the evidence." (Internal quotation marks omitted.) *Id.* Our supreme court has held that "hearsay evidence, such as affidavits, may be admitted *** where relevant and reliable." *People v. Thompkins*, 181 Ill. 2d 1, 18 (1998). "The determination of whether evidence is relevant and reliable is left to the discretion of the sentencing judge." *People v. Hall*, 194 Ill. 2d 305, 352 (2000).

¶ 66    "It is well settled that the trial court has broad discretionary powers in imposing a sentence [citation], and the trial court's sentencing decision is entitled to great deference." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Id.* Though Illinois "Supreme Court Rule 615(b)(4) grants a reviewing court the power to reduce a sentence," that power "should be exercised cautiously and sparingly." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." *Id.* "A sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Id.* (quoting *Stacey*, 193 Ill. 2d at 210).

¶ 67    "[W]hen a sentence falls within the statutory guidelines, it is presumed to be proper and will not be disturbed absent an affirmative showing that the sentence is at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense." *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. "[W]hen mitigating evidence is presented before the trial court, it is presumed that the court considered that evidence in imposing the defendant's sentence." *Id.* "[T]hat presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors." *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010).

23

¶ 68    Regarding the alleged improper use of the probable cause affidavit, it is defendant's burden to show the court abused its discretion in determining it to be relevant and reliable. Defendant makes no efforts to establish how the affidavit is irrelevant or unreliable. Instead, defendant asserts the affidavit was "unproven" or "hearsay." Defendant effectively takes issue with the very information he accepted as the State's evidence when he pleaded guilty, and when he pleaded so he accepted the fact that he was waiving his right to be proven guilty beyond a reasonable doubt. Defendant also asserts that the State needed to provide testimony from the officers to essentially substantiate the affidavit. Insofar as defendant's ineffective assistance of counsel argument is concerned on this point, as provided earlier, where a challenge by counsel of the complained upon conduct would have no merit in the lower court, defendant cannot establish counsel provided deficient performance. See *Drain*, 2023 IL App (4th) 210355, ¶ 58.

¶ 69    Defendant cites three cases in support of his assertion that "Illinois precedent makes clear that sentencing courts cannot rely on unproven charges in aggravation of a sentence." See *People v. Minter*, 2015 IL App (1st) 120958, ¶ 148; *People v. McAfee*, 332 Ill. App. 3d 1091, 1097 (2002); *People v. McPhee*, 256 Ill. App. 3d 102, 113-15 (1993). *Minter* suggests the opposite, stating:

"the court may rely on evidence of a defendant's other criminal activity, even if that conduct has not resulted in a conviction, where the trial court finds the evidence to be relevant and accurate. [Citation.] A mere list of *arrests or charges* in a presentence report, unsupported by live testimony *or other evidence* at the sentencing hearing, does not meet those standards." (Emphases added.) *Minter*, 2015 IL App (1st) 120958, ¶ 148.

We find that a mere list of arrests or charges in a presentence report as discussed in *Minter* is different from a probable cause affidavit that was the basis for the charging information and proffered facts at defendant's guilty plea hearing. Further, both *McAfee* and *McPhee* hold that it is

24

improper for the trial court to consider as an aggravating factor that it believed a defendant put a witness on the stand that falsely testified on the defendant's behalf. *McAfee*, 332 Ill. App. 3d at 1097; *McPhee*, 256 Ill. App. 3d at 113-15. None of these three cases supports defendant's sentencing argument in this case. We find no merit to defendant's contention that the circuit court improperly considered the probable cause affidavit in its sentencing determination.

¶ 70    Regarding defendant's assertion that the circuit court did not adequately consider his rehabilitative potential and the fact that he had young kids that would be affected by a lengthy sentence, defendant fails to make any compelling argument in this regard. Defendant's argument is tantamount to requesting that we simply reweigh the factors without any finding of an abuse of discretion. The circuit court considered defendant's rehabilitative potential when it reviewed (1) his lengthy criminal history, (2) the fact that he was given an opportunity for residential treatment and he left the facility, (3) the fact that he received a number of disciplinary tickets while in prison, (4) the fact that he had multiple parole violations, and (5) the fact that, in the month's time he was on home confinement, he violated the conditions multiple times, culminating with him cutting off his ankle monitor and escaping. His rehabilitative potential was considered; it just happened to be very low. Regarding his children, the circuit court explicitly considered them as well. It also considered that he abandoned them when he cut off his electronic monitor and escaped, and it considered the fact that he fled in a high-speed chase from police with his three-year-old son, unsecured and without a helmet, in his lap. Defendant provides no explicit evidence that mitigating factors were not considered.

¶ 71    Finally, defendant asserts that the circuit court failed to apprise him of the possibility of consecutive sentences. "The failure to properly admonish a defendant, alone, does not automatically establish grounds for reversing the judgment or vacating the plea. *** Whether

reversal is required depends on whether real justice has been denied or whether defendant has been prejudiced by the inadequate admonishment." *People v. Davis*, 145 Ill. 2d 240, 250 (1991). "Our supreme court has consistently held that Rule 402 requires only substantial, not literal, compliance with its provisions, and that every deviation from the stated requirements of the rule does not necessitate reversal." *People v. Baker*, 133 Ill. App. 3d 620, 622 (1985). Where the trial court failed to advise defendant of the possibility of consecutive sentencing prior to accepting his plea *and neither defense counsel nor the State mentioned the possibility of consecutive sentencing on the record*, the defendant's sentence was reversed, his plea vacated, and the matter remanded. See *People v. Akers*, 137 Ill. App. 3d 922, 924 (1985).

¶ 72    Here, though the circuit court told defendant he could be sentenced to *any* of the possible penalties repeatedly, it is arguable whether that alone would inform defendant about the possibility of consecutive sentences. However, a review of the record shows that defendant was aware that he could receive a consecutive sentence *because his original plea agreement was for a consecutive sentence*. In the plea hearing, defense counsel asked to make a record of the negotiated plea so that defendant was "very clear" about what the State was going to present. The State provided, "Judge, the negotiation at this point is he would be sentenced to four years in the Department of Corrections on 22-CF-273 with credit for any time served. He would be sentenced to four years *consecutive to that* in 24-CF-203 with credit for any time served." (Emphasis added.) The State continued, providing that it was aware of three additional charges it could file, but it was not a part of the plea agreement. The State asserted, "[h]owever, [defendant] will remain on electronic home monitoring during this period. If he violates that, if he gets into any new criminal trouble, all negotiations are off the table, and we will proceed to a sentencing hearing."

26

¶ 73 Defendant was therefore aware of the possibility of a consecutive sentence. Also, as it relates to defendant's argument regarding counsel providing ineffective assistance for failing to challenge the sentence in light of the *Erlinger* decision, as previously established, *Erlinger* does not create the basis for such a challenge here. Therefore, neither plea counsel nor postplea counsel provided deficient performance.

¶ 74                                  III. CONCLUSION

¶ 75 For the foregoing reasons, we affirm the judgment of the circuit court of Williamson County.

¶ 76 Affirmed.

*People v. Cooper*, 2026 IL App (5th) 250282

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Williamson County, Nos. 22-CF-273, 24-CF-203; the Hon. Michelle M. Schafer, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Imani Thornton, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ted Hampson, State's Attorney, of Marion (Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |